**In re CHRISTIAN CARE HOME OF CINCINNATI, INC., Appellant;
STATE CERTIFICATE OF NEED REVIEW BOARD, Appellee.**

[Cite as *In re Christian Care Home of Cincinnati,
Inc.* (1989), 64 Ohio App.3d 461.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–87.

Decided Dec. 28, 1989.

*Geoffrey E. Webster* and *Richard Goldberg,* for appellant.

*Anthony J. Celebrezze, Jr.,* Attorney General, and *Lawrence Pratt,* for appellee Ohio Department of Health (State Health Planning and Development Agency).

PEGGY L. BRYANT, Judge.

Appellant, a nursing home in Hamilton County consisting of thirty-three "long-term care facility" beds, filed a certificate of need ("CON") application with appellee, the Ohio Department of Health ("ODH"), on July 2, 1984. Appellant's CON application originally proposed to replace its facility with a facility consisting of eighty-four long-term care facility beds and sixteen "rest home beds."

In November 1985, appellee denied appellant's application. Appellant moved for reconsideration, modifying its initial request to thirty-three replacement and seventeen new long-term care beds. In December 1985, appellee denied the reconsideration request. Appellant then appealed the decision to the Certificate of Need Review Board ("board"). Pursuant thereto, a hearing was held in November 1986 before a hearing examiner. The hearing examiner recommended that the board grant a CON for the replacement of the thirty-three long-term care beds plus either (1) seventeen "assisted living" beds or (2) sixteen assisted living beds and one "isolation room." On July 17, 1987, the board remanded the case to appellee for consideration of the "33/17" and "33/16/1" projects.

Appellant appealed the remand order to Franklin County Common Pleas Court, which dismissed the case on the basis that the board's action was not a final appealable order. Appellant appealed to this court, and we reversed the trial court's decision and remanded for further proceedings. See *Christian Care Home of Cincinnati, Inc. v. Ohio State Certificate of Need Review Bd.* (1988), 48 Ohio App.3d 158, 548 N.E.2d 981. On January 11, 1989, the trial court on remand affirmed the original July 1987 order of the board. Appellant now appeals to this court and assigns the following four errors:

"1. The lower court erred in it [*sic*] interpretation of O.A.C. rule 3701–12–23 which mandates the granting of the requested certificate of need.

"2. The lower court erred in finding that the appellee, Department of Health (formerly SHPDA) is authorized to file objections to the report and recommendations of a hearing.

"3. The lower court erred in permitting appellee to file evidence outside the hearing and after the close of the record.

"4. The lower court erred in failing to weigh the evidence and finding the order to be supported by reliable, probative and substantial evidence."

▪ In its first assignment of error, appellant argues that the board erred when it remanded appellant's application to the department for consideration of a facility replacing the existing thirty-three long-term care beds with the

same number of beds. Appellant asserts that a replacement facility must contain at least fifty long-term care beds, citing Ohio Adm.Code 3701–12–23(D), which, at the time appellant filed its application, stated:

"Each application for a certificate of need relating to a long term care facility shall contain the following items, as applicable:

" * * *

"(3) For applications for newly constructed freestanding long term care facilities or newly constructed long term care facility components of continuing care retirement communities, documentation that the long term care facility will have a bed capacity of at least fifty beds."

Appellee contends that the rule's fifty-bed requirement explicitly applies only to "newly constructed" facilities, a term which, according to appellee, does not include replacement facilities; and that, since the proposed structure in the present case replaces an existing facility, the fifty-bed requirement does not apply.

Ohio Adm.Code 3701–12–23(D), as it existed at the time appellant filed its application, at best is lacking in clarity. Appellee's purported interpretation is not without some policy support, as it eliminates the possibility that, in order to replace the degenerating buildings of an existing but less than fifty-bed facility, appellee would be forced to grant approval for additional beds in a service area that already may have excess capacity. To the contrary, to the extent the rule is grounded on the premise that, to be cost effective, new construction must be not less than fifty beds, appellant's contentions have merit.

Interpretation of the section is further complicated by comparison to Ohio Adm.Code 3701–12–23(E), which, at all pertinent times, stated, in part:

"The director shall not approve applications for new long-term care facilities of more than one hundred fifty beds or for bed additions to existing long-term care facilities if the resulting facility will have more than one hundred fifty beds * * *."

Clearly, subsections (D) and (E) of the rule use different terms, "newly constructed facility" and "new facility," thereby at least suggesting that some distinction was intended. If that suggestion be correct, then appellant's argument appears meritorious, as its facility, although not new in the commonly used sense of the word, is to be newly constructed. However, even such an interpretation is not without complications, as it results in the somewhat anomalous and seemingly unsupportable distinction that a newly constructed facility may exceed the one-hundred-fifty-bed limit found in sub-

section (E) without meeting the exceptions found therein, whereas a new facility cannot.

Subsequent to appellant's application, Ohio Adm.Code 3701–12–23 was amended in what appears to be an attempt to clarify the rules and resolve some of the problems raised by the version of the rule at issue herein. The amended rule states, in pertinent part:

"(G) The director shall not grant certificates of need for the construction of new long-term facilities, including replacement facilities, other than hospitals that are long-term care facilities, with a long-term care bed capacity of less than fifty beds. The director may waive the criterion prescribed by this paragraph if the applicant demonstrates that the proposed facility of less than fifty beds can be operated in a cost-effective manner, and;

"(1) The facility's size is essential to serve a special health care need that otherwise will not be served; or

"(2) Is the the [sic] only feasible alternative for cost-effective correction of physical plant deficiencies for a project that complies with the criteria prescribed in paragraphs (D)(1)(b)(i), (D)(1)(c) and (D)(1)(d) of this rule.

"(H) The director shall not grant certificates of need for new or replacement long-term care facilities of more than one hundred fifty beds or for bed additions to existing long-term care facilities if the resulting facility will have more than one hundred fifty beds, except for a facility to replace a single, existing long-term care facility. The director may waive the criterion prescribed by this paragraph if the applicant demonstrates that a facility of more than one hundred fifty beds is essential to serve a special health care need that otherwise will not be served and that the facility can be operated in an efficient manner without sacrificing quality care for its patients."

While we do not suggest that, in all cases, an examination of subsequent amendments lends clarity to the interpretation of the former version of a rule, we feel that under the circumstances presented by the rule at issue, the clarifying amendments lend guidance to interpretation of the former version. Specifically, the amended rule deletes reference to newly constructed facilities and makes clear that the fifty-bed minimum applies both to new and to replacement facilities such as appellant's. Further, it eliminates any question about the underlying policy of the section by clearly stating the purpose to be cost effectiveness, again a factor supporting appellant's interpretation. Moreover, the amended rule eliminates the seeming discrimination between newly constructed facilities and new facilities, as it relates to maximum bed capacity, by eliminating any references to newly constructed facilities and stating that both new and replacement facilities are subject to the same limitation.

In the final analysis, we are persuaded that the amendments clarify the intended meaning of the rule at issue. As a result, we interpret Ohio Adm.Code 3701–12–23(D), as it existed when appellant filed its application, to require the Ohio Director of Health to grant a certificate of need for a minimum of fifty beds, if one be granted to appellant. Appellant's first assignment of error is sustained.

■ Appellant argues in its second assignment of error that Ohio statutes do not permit ODH to file with the board objections to the report of a hearing examiner. Appellant cites R.C. 119.09, which addresses adjudication hearings. R.C. 119.09 states, in part:

" * * * A copy of such written report and recommendation of the referee or examiner shall within five days of the date of filing thereof, be served upon the party or his attorney or other representative of record, by certified mail. The party may, within ten days of receipt of such copy of such written report and recommendation, file with the agency written objections to the report and recommendation, which objections shall be considered by the agency before approving, modifying, or disapproving the recommendation. * * * "

Under the language of R.C. 119.09, only a "party" may file objections. R.C. 119.01(G) defines "party" as "the person whose interests are the subject of an adjudication by an agency." R.C. 119.01(F) defines a "person" as "a person, firm, corporation, association, or partnership." Thus, an entity must be a "person" under R.C. Chapter 119 to be a "party" capable of filing objections under R.C. 119.09. The Ohio Supreme Court has ruled that the definition of "person" in R.C. Chapter 119 does not include a state agency. *State, ex rel. Osborn, v. Jackson* (1976), 46 Ohio St.2d 41, 49, 75 O.O.2d 132, 136, 346 N.E.2d 141, 146. Therefore, appellant argues, R.C. 119.09 did not authorize appellee's filing of objections.

Our starting point in determining this issue, though, is not R.C. 119.09, but R.C. 3702.58(A), the statute that governs procedure before the board, and R.C. 3702.57(E), which grants the board the authority to promulgate rules " * * * necessary to the performance of its duties and powers under section 3702.58 of the Revised Code." R.C. 3702.58(A) states, in part:

" * * * The decision of the board shall be issued within thirty days after the expiration of the time for filing objections to the report and recommendation of the hearing examiner under section 119.09 of the Revised Code * * *."

The statute thus adopts R.C. 119.09's time frame for the filing of objections, but it does not explicitly adopt R.C. Chapter 119's definition of "party." We may also reasonably infer that R.C. 3702.58(A) did not *implicitly* adopt the definition of "party" in R.C. Chapter 119 because an adjudication hearing

under R.C. 3702.58(A) takes place in a different context than an R.C. Chapter 119 hearing. A hearing under R.C. 119.06 to 119.09 takes place before the same agency that issues the contested order. An agency would have no need to file objections to a hearing officer's report; because the agency itself adjudicates the controversy, it can simply reject the report. In contrast, a hearing under R.C. 3702.58 takes place before an entity (the board) independent of the agency (ODH) that issued the initial order. The hearing thus takes place, from the agency's perspective, in a more adversarial context than a hearing under R.C. 119.09, and, consequently, the filing of objections becomes more meaningful.

In addition, pursuant to its rule-making authority under R.C. 3702.57(E), the board had enacted, at the time appellant filed its application, a specific rule addressing this issue. Ohio Adm.Code 3702-2-07(A) permits the State Health Planning and Development Agency (as ODH was formerly known) to file objections to a hearing examiner's report. Ohio Adm.Code 3702-2-06, which states that "[t]he adjudication hearing shall be conducted in accordance with section 119.09 of the Revised Code," would seem to lend support to appellant's argument that appellee was not a "party" for purposes of filing objections; however, Ohio Adm.Code 3702-2-06 does not specifically address the issue of objections. Thus, in light of Ohio Adm.Code 3702-2-07(A), which explicitly permits the agency to file objections, we conclude that appellee properly was allowed to file objections. See, also, *In re DEA–MC, Inc.* (June 27, 1989), Franklin App. No. 88AP–1097, unreported, 1989 WL 71603 (finding that the board's rules permit ODH to file objections). Accordingly, we overrule appellant's second assignment of error.

In its third assignment of error, appellant argues that the board should not have permitted ODH to file an affidavit after the board's hearing. However, Ohio Adm.Code 3702-2-06 adopts the hearing procedure under R.C. 119.09 and, in this instance, no other rule specifically addresses the issue. R.C. 119.09 provides that " * * * [t]he agency may order additional testimony to be taken or permit the introduction of further documentary evidence. * * * " We therefore overrule appellant's third assignment of error.

In its fourth assignment of error, appellant asserts that the lower court erred in finding the order to be supported by reliable, probative, and substantial evidence. Appellant makes several arguments attacking the accuracy of the board's determination that "insufficient bed need" existed in Hamilton County to support appellant's proposed facility.

Ohio Adm.Code 3701–12–23(B) sets forth a formula to determine a county's "bed need." In the present case, appellant does not dispute that the bed need formula indicated that Hamilton County needed no additional beds. When the

formula indicates that a county does not need additional beds, Ohio Adm.Code 3701–12–23(I) provides that:

" * * * [A] presumption is created that there is insufficient need for the project and the applicant has the burden of establishing:

"(1) That the project otherwise complies with the provisions of paragraph (H)(1) of this rule; and,

"(2) That there is sufficient need for the service in the service area."

The exception in subsection (1) refers to Ohio Adm.Code 3701–12–23(H)(1), which addresses " * * * [a]pplications that do not propose the addition of long-term care beds." Appellant clearly does not rely on this exception because appellant's application proposed an increase in the number of beds at its facility.

In regard to the second exception, appellant asserts that it demonstrated sufficient need for a larger facility through the testimony of Gloria Luebbers, the business manager of Christian Care. Luebbers testified that the nursing home could fill an additional fifty-one long-term care beds in less than six months. More specifically, she testified that the facility has a waiting list and a number of applicants from northern Kentucky. The hearing examiner, however, found Luebbers' testimony unconvincing. For example, the examiner did not find Luebbers' testimony regarding the waiting list persuasive, since she also testified that the home did not keep "a real accurate list."

Moreover, even if the hearing officer had found Luebbers' testimony credible, the foregoing testimony still would not have overcome the presumption of the formula's correctness under the facts of this case. Appellant could rebut the presumption of insufficient bed need only with a showing of "sufficient need for the service in the service area." Appellant's argument is that *it* has a "need" for more beds to meet the demand for use of its facility. However, Ohio Adm.Code 3701–12–23 generally examines the "need" for services throughout a county or health service area, not the "need" of a single facility. The rule would serve little purpose if a facility could add beds merely because patients prefer that facility, even though the county or service area as a whole has an excess of appropriate beds. According to appellee, the word "need" in Ohio Adm.Code 3701–12–23(I)(2) is intended to refer to a specific need unrelated to total county population, since the rule's formula adequately addresses the effect of total population. As an example of a specific need, appellee suggests a need for nursing homes that are providers under the Medicaid program (see R.C. Chapter 5111) in a county that has an excess of beds for patients in general.

Whether or not appellee's restrictive interpretation of need is appropriate, appellant contends that, even accepting appellee's restrictive definition of "need," it demonstrated sufficient evidence of a specific need through the testimony of Luebbers. She testified that "there's nobody else in our area that deals with our particular target group." She explained that appellant "deal[s] with a specific market. Most all of the other nursing homes in our area deal with middle to middle upper or upper income levels. We deal with a medium to low income group." However, other testimony existed that allowed the hearing examiner to reach an opposite conclusion. The hearing examiner's report noted that Luebbers later testified on cross-examination that other facilities in the area serve their target group. In addition, Roberta Elder, a medical consultant for ODH, asserted that there were facilities "servicing the same type of clientele as Christian Care within the immediate vicinity." In short, the testimony at the hearing supported the examiner's conclusion that appellant's facility did not serve a specific or special need.

Appellant also contends that the bed need formula "does not differentiate bed type, restrictions on admissions, price or quality." This contention, though, merely recognizes that the bed need formula focuses on "population" (defined in Ohio Adm.Code 3701–12–23[B] as "the director's estimate of 1988 county population of persons aged seventy-five and over based on Ohio Department of Development projections for 1985 and 1990"). The rule itself seems to recognize that "population" does not always end the inquiry, since Ohio Adm.Code 3701–12–23(I) gives an applicant the opportunity to rebut the presumption of need that the formula creates. In addition, appellant contends that the formula ignores the alleged fact that thirty percent of long-term care facility users in Ohio are under age seventy-five. However, appellant does not explain what factors exist in Hamilton County that would make the formula's use for that county particularly misleading.

■ Appellant also argues that appellee has granted CONs to other facilities in Hamilton County despite the excess of beds. Appellant, though, does not state why this fact requires the granting of a CON in the present case. Appellant instead seems to argue that this fact requires a less rigid application of the bed need formula. However, Ohio Adm.Code 3701–12–23(I) clearly states that in all cases "the applicant has the burden" of rebutting any presumption of insufficient need that the formula creates.

■ Lastly, appellant argues that, despite the bed need formula, the actual occupancy rate in Hamilton County exceeded the state's desired minimum occupancy rate of ninety percent. Appellant's rebuttal witness, Randall Lindquist, testified that long-term care facilities in Hamilton County had an occupancy rate of over ninety-two percent. The hearing examiner's report

rejected Lindquist's testimony because "[o]n cross-examination, Ms. [*sic*] Lindquist's liberal interpretation of the bed need formula was refuted by his own admission that his interpretation was in direct contradiction with the language of the statute." However, Lindquist's "liberal interpretation" of Ohio Adm.Code 3701–12–23(H) and (I), the subject of appellee's cross-examination, has no apparent relevance to the credibility of Lindquist's occupancy rate testimony. Ohio Adm.Code 3701–12–23(H) and (I) do not set forth any methods for determining the occupancy rate of a county; in fact, Lindquist never specified how he determined the occupancy rate of Hamilton County, although presumably his method differed from the bed need formula, since his testimony was intended to rebut that formula. Lindquist's calculation may not be as reliable or as accurate as the bed need formula's; however, Lindquist's unrefuted testimony rebutting the formula's presumption merited the attention of the board. Since the hearing examiner did not clearly discuss the effect of Lindquist's testimony, appellant's argument is well taken. We sustain the fourth assignment of error to the extent it addresses Lindquist's testimony on the occupancy rate.

■ One final concern, which appellant raised in oral argument, is that the board's order never explicitly rejected or approved appellant's modified request for thirty-three replacement and seventeen new long-term care facility beds. The board merely remanded the case back to ODH for consideration of the hearing officer's recommendation of a thirty-three long-term care bed facility. Although one could argue that, by not explicitly addressing appellant's fifty-bed request, the board implicitly rejected it, we conclude that a basic requirement for an effective adjudication hearing under R.C. 3702.58 is that the board actually rule on the CON decision from which the applicant has appealed. In short, the board must address on remand appellant's rebuttal evidence in relation to appellant's request for a facility consisting of fifty long-term care beds.

Based on the foregoing, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

JOHN C. YOUNG, J., concurs.

WHITESIDE, J., concurs separately.

WHITESIDE, Judge, concurring separately.

Although I concur in the judgment, I do so for slightly different reasons and would sustain the fourth assignment of error to a greater degree.

Although I concur in the majority opinion concerning the first assignment of error, I find some additional reasons for the conclusions despite appellee's contentions to the contrary. The Certificate of Need Review Board ("board") implicitly determined that Ohio Adm.Code 3701–12–23(D)(3) applies to all newly constructed freestanding long-care facilities regardless of whether that facility replaces a former facility. The appellee contends that we should defer to the administrative agency's interpretation of the regulation. While this is a proper principle in the case of a regulation of doubtful meaning, it is not to be applied to vary the plain meaning of a regulation or in cases where there is no established administrative interpretation. Appellee's postulate fails on both counts.

The original application of the appellant, Christian Care Home of Cincinnati, was denied by the Director of the State Health Planning and Development Agency by a letter dated November 14, 1985. Nothing in that letter hints or suggests an interpretation of Ohio Adm.Code 3701–12–23(D)(3) precluding its application to newly constructed freestanding long-term care facilities constructed to replace an existing facility. In fact, the reason given would not even comport with such an interpretation, especially since at that time, the application was to construct a one-hundred-bed facility. No interpretation has been made by the director (now the director of the Ohio Department of Health ["ODH"]), as to the interpretation to be given to the rule. This is quite appropriate inasmuch as the adjudication hearing is conducted before the board, rather than before the director. The application was amended while pending before the board to the fifty-bed request. Thus, the interpretation issue was never before the director.

On the other hand, there was evidence of testimony from the former secretary of the public health council, the rule-making authority of the health department, and the body which passed the rule under consideration. Although he testified as to the application of some of the other paragraphs of the rule, he did not testify concerning the application of the particular provision under consideration here, the fifty-bed minimum. The hearing examiner, although making recommendation of factual findings which would ordinarily be consistent only with the granting of a request for only thirty-three beds, recommended that the application be approved for the construction of the fifty beds, replacing the thirty-three existing, with the addition of seventeen assisted-living beds (or one isolation room and sixteen assisted-living beds). Likewise, the only testimony presented by appellee was that of a medical-facilities consultant employed by the ODH. She testified unequivocally that the construction of a new facility consisting of thirty-three intermediate-care beds, one isolation room, and sixteen assisted-living beds would have been an appropriate project under the guidelines of the administrative

code, which can be explained only if the consultant was construing Ohio Adm.Code 3701–12–23(D) to apply to all newly constructed freestanding long-care facilities. In other words, although an existing facility with less than fifty beds could continue to operate, if it be determined to construct a new facility to replace such a facility with a deficient number of beds, the new facility must conform to the requirement of a minimum of fifty beds. In short, under the plain language of the regulation, appellant would not be permitted to construct a new facility containing only thirty-three long-term care beds to replace its existing thirty-three long-term care bed facility but, instead, would, by the regulation, be required to provide for fifty beds in any newly constructed replacement facility. The regulation on June 22, 1984 apparently read as follows:

"(D) Each application for a certificate of need relating to a long term care facility shall contain the following items, as applicable:

" * * *

"(3) For applications for newly constructed freestanding long term care facilities * * * documentation that the long term care facility will have a bed capacity of at least fifty beds."

The majority opinion points out the subsequent clarification by amendment. Prior to June 22, 1984, the applicable rule was Ohio Adm.Code 3701–12–23(A) which provided that " * * * the minimum size for new or modernized long-term care facilities shall be fifty beds. * * * " Effective September 10, 1984, Ohio Adm.Code 3701–12–23(D) was amended to read substantially as it did until the amendment effective January 2, 1989 quoted in the majority opinion:

"The SHPDA [now 'director'] shall not approve applications for newly constructed freestanding long-term care facilities or newly constructed long-term care facility components of continuing care retirement communities unless the long-term facility or component will have a bed capacity of at least fifty beds."

The parties have all quoted and relied upon this latter version of Ohio Adm.Code 3701–12–23(D), which was the one in effect at the time of amendment of the application to one for fifty beds.

Appellee has not explained the basis for limiting the application of the rule so as not to apply to newly constructed replacement facilities. Had the agency so intended, presumably it would have so provided in the rule itself. It would have been a simple matter to have made another provision in the rule providing that it should not apply to replacement facilities, even though newly constructed. But the rule contains no such language. It would have been so simple, had it been intended, to have added the words at the end of the rule,

"unless such facility replaces an existing facility having less than fifty beds." Those words do not exist in the rule.

Any doubt of the meaning of the rule provision is dispelled by referring to the other portions of the rule, including the definition of "long-term care facility" set forth in Ohio Adm.Code 3701–12–23(A). Paragraph (B) of the rule sets forth the formula for determining long-term care bed need. The drafters of the rule recognize the difference between newly constructed facilities and new facilities which is clearly evinced by a comparison of paragraphs (D) and (E). Paragraph (D) provides as set forth above. Paragraph (E) states that "[t]he director shall not approve applications for *new long-term care facilities of more than one hundred fifty beds * * *.*" (Emphasis added.) The appellee urges the words "newly constructed free-standing long-term care facilities" have the same meaning as "new long-term care facilities," but that is not the case. The one-hundred-fifty-bed limitation applies only to *new facilities*, whereas the fifty-bed minimum applies to all *newly constructed facilities*, whether or not a new facility be involved. In short, as the majority holds, the first assignment of error is well taken.

However, this does not necessarily mean that the board erred in its determination. The board did not affirmatively deny the application but, instead, remanded the application for consideration by the ODH. Under some review procedures, this might be an appropriate means of dealing with the situation. Under the subject statutory scheme as to the relationship between the director of health and the board, however, such remand is inappropriate. First, we note that it is not the director of health who adopts rules but, instead, the public health council created by R.C. 3701.33, which is not under the direction of the director of health but, instead, consists of seven members appointed by the Governor. On the other hand, the director of health does make the initial determination whether to grant a certificate of need. The director, however, although he administers the program, reviews applications, and grants or denies certificates of need, does not conduct an adjudication hearing. Rather, the independent Certificate of Need Review Board conducts the adjudication hearing pursuant to R.C. 3702.58.

In other words, if the director denies a request for a certificate of need, the applicant may request an adjudication hearing before the board, which is the only adjudication hearing conducted, the director not being required to conduct a hearing. The determination by the board is *de novo*, that is, it is not just a review proceeding but, instead, the matter must be referred to a hearing examiner who must render "a written report setting forth findings of fact and conclusions of law and a recommendation of the action to be taken by the board." The board thereupon makes its decision. As noted above, there

are no conclusions of law set forth in the hearing examiner's report or in any finding by the board limiting the application of Ohio Adm.Code 3701–12–23(D) to new facilities.

The statute, R.C. 3702.58(A), further provides that " * * * [t]he board's decision shall be based upon the record, and shall be considered as the final decision or order of the board. * * * " R.C. 3702.58(B) does provide that "[i]f, in a proceeding under division (A) of this section, the board * * * determines that a health service agency or the director of health committed procedural error, the board * * * may remand the matter to the director of health for further consideration or action." This clearly connotes that a remand to the director is appropriate only if the board finds the director "committed procedural error." Here, there is no finding of procedural error but, instead, only a finding that the modified application was improperly denied based upon the facts and the law.

I concur with the majority's finding that the decision of the common pleas court must be reversed upon this basis. The board, rather than remanding the case back to ODH, must make the determination, and should have considered all of the evidence.

I concur generally with the majority's discussion of the third assignment of error. Likewise, I concur in the majority's finding upon the second assignment of error since the director of health must be a proper party in order to ensure a proper adjudication hearing. Otherwise, in many instances, the hearing before the board would be one-sided with only appellant present and presenting evidence. The director of ODH is a necessary party to present the evidence in the public interest. On the other hand, I find some difficulty in making the ODH itself a party since it is the director, not the ODH, who makes the initial determination. In other words, the ODH is not the agency involved but, instead, it is the director of health. The rule-making party is even different as set forth above, *i.e.*, it is the public health council. The confusion stems from an assumption that the ODH rather than the director of health issued the initial order. Admittedly, the statutes are confusing in differentiating between the different agencies and I note that even the style of this case refers to the State Certificate of Review Board as being the appellee. Accordingly, the first assignment of error is well taken, but the second is not. Likewise, the third assignment of error is not well taken since no prejudice has been demonstrated.

The fourth assignment of error is well taken. It is the duty of the common pleas court upon administrative appeal pursuant to R.C. 119.12 to engage in a limited weighing of the evidence in order to determine whether the order appealed from is supported by reliable, probative, and substantial evidence.

Ohio Adm.Code 3701–12–23(I)(2) provides that "[i]n a county with insufficient annual bed need, as determined under paragraph (B) of this rule, a presumption is created that there is insufficient need for the project and the applicant has the burden of establishing:  *  *  *  (2) [t]hat there is sufficient need for the service in the service area."  Here, the words "service area" are utilized whereas in Ohio Adm.Code 3701–12–23(B) the determination of need is by county.  "Service areas" may or may not be the same as the county, and may be less than or more than the county with respect to a particular facility. What the board did in this case is to find that in order for there to be "sufficient need for service in the service area," it must be determined that the need determination made pursuant to the Ohio Administrative Code is erroneous.  There is no such suggestion.  One provision determines "annual bed need" and the other determines "need for the project."  These are not the same thing.  There may be a need for a particular service in connection with a particular project in the service area even though there is sufficient annual bed need in the county.

The rule recognizes that there are varying types of service that may be performed by a long-term care facility and that there may be need for such a service even if there not be an overall need for additional long-term care beds. In fact, the regulation itself recognizes specific instances where this is true and eliminates certain types of service from application of the presumption of insufficient need for service.  See Ohio Adm.Code 3701–12–23(H).  The presumption of lack of need for the service may be overcome by other evidence relating to the specific facility as specific service to be provided in the service area which may be smaller or larger than the county.  Only by such an interpretation does Ohio Adm.Code 3701–12–23(I)(2) have any significance or meaning.

Appellant's argument is not that the *appellant* has a need for more beds. Rather, what appellant contends is that there are recipients of service who are going unserved because they are applying to appellant for service which it is unable to provide.  Appellant contends that these same people cannot be cared for elsewhere for whatever reason.  Although appellant's evidence may not be overwhelming in this respect, it most certainly should be considered in the proper light.

Accordingly, although I concur in the judgment of reversal and remand, including the remand to the board for direct consideration and determination of the modified application, I would sustain the fourth assignment of error to the extent indicated herein.