**In re CHRISTIAN CARE HOME OF CINCINNATI, INC.**

[Cite as *In re Christian Care Home of Cincinnati, Inc.* (1991), 74 Ohio App.3d 453.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–908.

Decided June 6, 1991.

Geoffrey E. Webster and Richard Goldberg, for appellant.

Lee Fisher, Attorney General, and Lawrence D. Pratt, Assistant Attorney General, for appellee.

BOWMAN, Presiding Judge.

Appellant, Christian Care Home of Cincinnati ("Christian Care"), directly appeals, pursuant to R.C. 3702.58(E), an order rendered by the appellee, Certificate of Need Review Board ("board").

This matter has a lengthy and complex history, having twice before been appealed to this court on other issues.[1] Briefly, the facts indicate that Christian Care is a thirty-three-bed, long-term care nursing home facility which, in 1984, applied to the Ohio Department of Health ("ODH") for a certificate of need ("CON") to upgrade from thirty-three to one hundred beds. In November 1985, ODH denied this application, and Christian Care moved for reconsideration, modifying its request to thirty-three replacement and seventeen new long-term care beds. This motion for reconsideration was subsequently denied by ODH and Christian Care appealed the decision to the board.

After being appointed by the board and presiding over the matter in 1987, hearing examiner Robin Stith recommended the board's approval of Christian Care's modified plan involving replacement of the original thirty-three beds and an addition of seventeen beds. The board did not actually rule upon the matter but remanded it to ODH for consideration of the modified request.

From July 1987 to July 1990, the matter shuttled between ODH, the board, the common pleas court and this court on various procedural and substantive

---

1. See Christian Care Home of Cincinnati, Inc. v. Ohio State Certificate of Need Review Bd. (1988), 48 Ohio App.3d 158, 548 N.E.2d 981 ("CCHC I"); In re Christian Care Home of Cincinnati, Inc. (1989), 64 Ohio App.3d 461, 581 N.E.2d 1157 ("CCHC II").

questions. In *CCHC II*, Christian Care appealed to this court the board's remand of the modified request. Christian Care raised as error, *inter alia*, that the board's order was unsupported by reliable, probative and substantial evidence, since the board had ignored evidence that there was sufficient bed need in the service area and in the specific facility to warrant allowance of additional beds. Christian Care argued that it had adequately rebutted the presumption raised by application of the statutory bed need formula through testimony that the home could fill the additional beds it sought.

We determined that only a showing of sufficient need for additional beds in the service area, and not in the individual facility, could rebut that presumption, concluding that Christian Care had not met its burden. However, we agreed with Christian Care's contention that the board had failed to adequately consider rebuttal testimony by former ODH employee Randall Lindquist, who stated that ODH recognized an optimal occupancy rate for nursing homes of ninety percent.

Finally, in *CCHC II*, this court determined that the board had failed to specifically address the modified CON application for thirty-three replacement and seventeen additional beds. We therefore remanded the matter to the board for evaluation only of Lindquist's testimony and for consideration of Christian Care's modified request.

In February 1990, the common pleas court issued a judgment entry remanding the matter back to the board for consideration of these issues. The board appointed hearing examiner Susan Banchefsky to review the record and to comply with the dictates of *CCHC II* to consider the testimony of Lindquist in relation to Christian Care's modified request.

On July 9, 1990, the hearing examiner issued a report and recommendation to the board in which she found that Lindquist's testimony was unsupported and irrelevant, and recommended that Christian Care's modified CON application be denied. The board approved the report and recommendation on July 26, 1990. Christian Care subsequently filed appeals in both this court and in the Franklin County Court of Common Pleas setting forth the following as error:

"1. The State Certificate of Need Review Board's July 26, 1990 adjudication order, by adopting the board's hearing examiner's July 9, 1990 report and recommendation is not based upon reliable, probative and substantial evidence and not in accordance with law.

"2. The State Certificate of Need Review Board's adoption of its hearing examiner's report and recommendation within a July 26, 1990 adjudication order is contrary to the findings contained within a December 28, 1989 opinion

of the Court of Appeals, Tenth Appellate District, which was issued in this matter.

"3. The State Certificate of Need Review Board's use of a new hearing examiner who did not have the opportunity to observe the demeanor of witnesses testifying at the adjudication hearing held in this matter for the issuance of a report and recommendation did not comply with fundamental due process requirements and was not in accordance with law."

Former R.C. 3702.58(E)(3) sets forth our standard of review in this matter:

"(3) The court shall affirm the board's order if it finds, upon consideration of the entire record and any additional evidence admitted under division (E)(2) of this section, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it shall reverse, vacate, or modify the order."

Analysis of whether the board's decision was supported by substantial, reliable and probative evidence " * * * essentially is a question of the absence or presence of the requisite quantum of evidence. * * * " *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 67, 407 N.E.2d 1265, 1267. A reviewing court is required to give " * * * due deference to the administrative resolution of evidentiary conflicts. * * * " *Conrad, supra,* at 111, 17 O.O.3d at 67, 407 N.E.2d at 1267.

█ Christian Care's first assignment of error charges that the board improperly discounted evidence that the home could easily fill the additional seventeen beds sought. Christian Care also asserts that the board should have considered evidence it presented that other homes in the Hamilton County service area had received CONs during the pendency of its own application.

We reject these contentions on the basis that we addressed identical arguments by Christian Care in *CCHC II.* In that case, we determined that the presumption of insufficient bed need could be rebutted only by a showing of sufficient need for additional beds in the service area, not by a showing of need in a single facility. We additionally found that the test was not whether a single facility could fill additional beds but whether similar facilities in the service area had vacancies. Finally, we rejected Christian Care's argument that the board's grant of CONs to other facilities somehow entitled Christian Care to a less rigid application of the bed need formula since this assertion did not serve to rebut the presumption of insufficient bed need.

Finding that these issues have already been addressed, we conclude that Christian Care is precluded from relitigating them here.

Christian Care's first assignment of error also alleges that the board improperly ignored its assertions that its facility was badly in need of rehabilitation, and that obtaining a CON could correct this problem. The hearing examiner considered this question in her report and recommendation and found that the physical condition of the facility was an issue beyond the scope of her powers of review, being instead under the control of the licensing investigators within ODH. Christian Care counters that this question did fall under the scope of review since Ohio Adm.Code 3701–12–23 includes this factor as part of the determination by ODH of whether to grant a CON.

Ohio Adm.Code 3701–12–23(H)(6), as it read at all times pertinent to this action, listed in its order of preference for granting CON applications proposals for the addition of long-term beds and the renovation or replacement of existing beds so long as bed need is present in the service area. Since Christian Care's application proposed an increase in the number of beds at its facility, Christian Care needed to rebut the presumption of insufficient bed need which had been raised by application of the bed need formula.

This was true regardless of any physical deficiencies in the Christian Care building, particularly since the claimed problems with the structure had not prevented ODH from renewing Christian Care's license. Moreover, while a CON may be denied on the basis of noncompliance with licensure requirements, see Ohio Adm.Code 3701–12–23(F)(2), the provision clearly does not require ODH to grant a CON in order to avoid possible future licensure problems due to structural deficiencies.

We therefore conclude the hearing examiner's interpretation of the role played by the claimed building problems was essentially correct. Christian Care had no licensure problems with its current facility and had failed to rebut the presumption of no bed need; thus, the hearing examiner was not required to consider the question of the alleged need for rehabilitation of the building in formulating her recommendation regarding the CON application.

Christian Care additionally charges that the board failed to rely upon reliable, probative and substantial evidence when it rejected Lindquist's testimony as unsupported and irrelevant. At the hearing on this matter before Robin Stith, Lindquist testified that the desired occupancy rate for a long-term facility was ninety percent and that the occupancy rate in Hamilton County for 1985 was 92.4.

In contrast, ODH medical facilities consultant Roberta Elder testified that application of the bed need formula to Hamilton County facilities showed an " * * * extreme excess, probably one of the largest in the state, * * * " and that Christian Care had failed to present to ODH that it was proposing a

specific project justifying an override of the bed need formula. Elder also stated that the minimum ideal occupancy rate was ninety-seven or ninety-eight percent and that the Hamilton County average was ninety-two percent. Elder testified that, " * * * on any given day in 1985, there were in excess of 500 available beds * * * " in the county. Finally, when asked whether the original intent of the CON formula system was to encourage a goal of ninety percent occupancy, Elder denied that ninety percent was the ideal.

The hearing examiner discounted Lindquist's testimony as " * * * somewhat irrelevant in light of all those facilities in Hamilton County which fall below even 90%, * * * " and was further persuaded by Elder's testimony denying ninety percent as a goal and outlining the excess of beds available in the service area.

We find the decision of the board adopting the hearing examiner's report and recommendation was based upon reliable, probative and substantial evidence. The hearing examiner weighed Lindquist's testimony against Elder's contradictory testimony and concluded that Lindquist's assertions of a ninety percent ideal maximum occupancy rate were unfounded and outweighed. The board concluded that Christian Care had failed to adequately rebut the presumption of insufficient bed need raised by ODH. Essentially, Christian Care offered only Lindquist's testimony to rebut the presumption that no beds were needed in the service area. Even assuming Lindquist correctly asserted that ninety percent was the optimal occupancy rate sought in a CON review, other factors potentially weigh upon the decision to grant a CON, including the exact number of empty beds in the service area, the type and number of additional beds sought, and the occupancy rates achieved by other service areas in the state. For example, it was appropriate to consider that at the time of Christian Care's CON application, Hamilton County had one of the highest vacancy rates in the state.

We therefore find that the additional CON review considerations outlined by Elder would provide a basis on which the hearing examiner, and the board in adopting her report, could give Elder's testimony greater weight. Elder's testimony was reliable, probative and substantial, ultimately outweighing Lindquist's testimony. Therefore, we overrule Christian Care's first assignment of error.

Christian Care's second assignment of error asserts that the board's adoption of the hearing examiner's report and recommendation contradicted the guidelines we set forth in *CCHC II.* Specifically, Christian Care alleges that the hearing examiner failed to properly consider Lindquist's testimony because she " * * * found Mr. Lindquist's testimony on the issue of the optimal occupancy rate to be 'somewhat irrelevant.' * * * "

We disagree with Christian Care's view of whether, and to what extent, the hearing examiner reviewed Lindquist's testimony. In her report and recommendation, the hearing examiner stated that she found Lindquist's testimony irrelevant in light of other evidence tending to show the optimal occupancy rate was higher than that testified to by Lindquist and that a number of facilities were well below ninety percent.

Thus, the hearing examiner did consider Lindquist's testimony, as directed, concluding it had little weight and ultimately could not affect the decision whether to grant the CON. We therefore overrule Christian Care's second assignment of error.

Christian Care's third assignment of error charges that the board's appointment of a new hearing examiner to consider both Lindquist's testimony and the modified CON application violated Christian Care's due process rights. According to Christian Care, Robin Stith should have again been appointed to preside over this matter since only she had had the opportunity to observe the demeanor of the witnesses. Christian Care argues that appointment of a new hearing examiner only to review and analyze the record could not meet due process requirements.

R.C. 119.09, outlining the adjudicatory procedure for administrative cases, provides, in part:

"In any adjudication hearing required by sections 119.01 to 119.13 of the Revised Code, the agency may appoint a referee or examiner to conduct said hearing. He shall have the same powers and authority in conducting said hearing as granted to the agency. * * * The agency may order additional testimony to be taken or permit the introduction of further documentary evidence. The recommendation of the referee or examiner may be approved, modified, or disapproved by the agency, and the order of the agency based on such report, recommendation, transcript of testimony and evidence, or objections of the parties, and additional testimony and evidence *shall have the same effect as if such hearing had been conducted by the agency.* No such recommendation shall be final until confirmed and approved by the agency as indicated by the order entered on its record of proceedings, and if the agency modifies or disapproves the recommendations of the referee or examiner it shall include in the record of its proceedings the reasons for such modification or disapproval." (Emphasis added.)

The statute indicates that the board herein was permitted to accept the evidence presented to and evaluated by the board's hearing examiner as if the hearing had been conducted by the board itself. There is no specific requirement in the statute that the hearing examiner's report and recommendation must be based upon live testimony, nor is there a requirement that the same

hearing examiner must conduct all hearings or review all evidence in the same matter.

We may not interpret R.C. 119.09 in such a manner as to expand the intent expressed therein by the General Assembly. *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 555 N.E.2d 630. The board was permitted under this statute to conduct its own review of the evidence and transcribed testimony without conducting further hearings on the matter. See *In re Certificate of Need Application of Providence Hosp.* (1990), 67 Ohio App.3d 391, 587 N.E.2d 326. Thus, we do not agree with Christian Care that a due process violation occurred simply because the board appointed a different hearing examiner to conduct further review rather than doing so itself. The board was entitled to accept or reject her report and recommendation, so that the board retained its power of review while delegating to the hearing examiner the duty of assessing the issues and evidence previously not considered by the board.

■ Moreover, Christian Care fails to show how allowing a different hearing examiner to conduct a review of the record prejudiced its case, apart from its obvious allegation that the denial of the CON application was due to these alleged flaws. A sufficient showing of prejudice must precede a finding that any action by the board constituted error. See *Frantz, supra.*

We thus overrule Christian Care's third assignment of error.

For the foregoing reasons, appellant's first, second and third assignments of error are overruled and the order of the Certificate of Need Review Board denying Christian Care's CON application is affirmed.

*Judgment affirmed.*

JOHN C. YOUNG and JONES, JJ., concur.

FRED E. JONES, J., of the Twelfth Appellate District, sitting by assignment.