OPINION
{¶ 1} This is an appeal by appellant, Wedgewood Realty, LLC, from an order of the Ohio Department of Health ("ODH"), denying appellant's application for a certificate of need ("CON"), in which appellant sought to relocate 50 nursing facility beds from Atwood Manor, Galion, Ohio, to a new nursing facility.
 {¶ 2} The following facts are taken primarily from a report and recommendation of an ODH hearing examiner ("hearing examiner"), following a hearing conducted on [D1] October 3, 2005. On January 18, 2005, Atwood Manor, a nursing home located in Galion, closed operation because its owner could not meet the current requirements for certification and licensure. On January 19, 2005, appellant, an entity owned by Frank Murphy ("Murphy"), filed a CON application, seeking approval of a project to relocate 50 nursing facility beds from Atwood Manor to a newly constructed facility, also to be located in Galion, and to be named the Galion Nursing and Rehab Center. The initial estimated cost of the project was $5,705,000.
 {¶ 3} On February 3, 2005, ODH issued a request for additional information. Appellant responded to the request on March 23, 2005, and in its response indicated that the project cost now exceeded $6,000,000. On March 30, 2005, ODH issued a second request for additional information, and appellant responded to this request on May 5, 2005. ODH declared the CON application complete on May 20, 2005, but requested additional information, and informed appellant of its requirement to publish certain public notices regarding the project. Appellant subsequently published the notices.
 {¶ 4} On June 17, 2005, Tonya Sheets ("Sheets"), on behalf of the Services Employees International Union ("SEIU"), filed objections to appellant's CON application. Specifically, in its objections, SEIU contended that the applicant: (1) failed to demonstrate the need for the facility and failed to show the impact of this project on other Crawford County nursing facilities; (2) proposed unrealistic operating projections; (3) failed to demonstrate the cost effectiveness of the proposed project; (4) provided incomplete information and failed to respond fully to subsequent questions from ODH; and (5) failed to implement at least one prior approved CON project. Sheets further requested an adjudication hearing.
 {¶ 5} On July 22, 2005, appellant filed a motion to dismiss the objections and comments filed by Sheets and SEIU, asserting in part that the objections had not been received by ODH in a timely manner. On August 15, 2005, a hearing examiner denied the motion to dismiss, finding that Sheets and SEIU were "affected persons," and that the objections were timely filed with ODH.
 {¶ 6} In a memorandum dated September 19, 2005, ODH recommended approval of the project. The recommendation was based upon a staff report prepared by John A. Hoffman, a health services policy analyst with ODH.
 {¶ 7} The hearing examiner conducted a hearing on October 3, 2005. Cathy Meals, a research analyst with SEIU, testified on behalf of Sheets and SEIU (collectively "objectors"), and gave the following testimony at the hearing. SEIU is a health care and social services union, with approximately 28,000 members. Prior to the closing of Atwood Manor, there were seven nursing care homes in Crawford County; SEIU represents employees at two of those nursing homes. At the time SEIU filed objections, there were 103 unoccupied beds in Crawford County.
 {¶ 8} On September 8, 2005, Meals drove to the site of the proposed facility and took pictures. A sign at the site read: "Future Site of Galion Nursing and Rehab Center." (Tr. 16.) According to Meals, "construction is well underway at this facility." (Tr. 31.)
 {¶ 9} Meals testified that Murphy owned another entity, Sunbury Realty, and that Murphy had previously filed a CON application to move 30 beds from Sunbury Nursing Home to Morning View Care Center of Sunbury. The project was approved in February 2004, and since that time Murphy had submitted a separate CON application for a 50-bed facility to be known as Loch Lomond Care Center. According to Meals, 30 of those beds were intended to be the 30 beds approved in the Morning View CON. Meals further testified that the Loch Lomond application was denied in May 2005, but refiled again in September 2005, and subsequently withdrawn.
 {¶ 10} Hoffman, a health services policy analyst with ODH, also testified at the hearing. Hoffman reviewed appellant's CON application and prepared a staff report.
 {¶ 11} On January 24, 2006, the hearing examiner issued a report and recommendation, finding that objectors had proven, by a preponderance of the evidence, that the CON application submitted by appellant was "not in accordance with the rules adopted under section 3702.57 of the Revised Code[,]" and "not in accordance with OAC 3701-12-20(J)(5), OAC3701-12-20(R) and OAC 3701-12-05(A)." More specifically, the hearing examiner found in part: "Applicant has failed to provide any information regarding the historical performance of related parties to the Applicant in providing cost-effective health care services," and that "[t]he Applicant has failed to address any approved CON applications filed by related parties." Accordingly, the hearing examiner recommended that the director not approve the CON application.
 {¶ 12} Both sides filed objections to the report and recommendation. By order mailed on March 10, 2006, the director of ODH denied appellant's CON application. The decision of the director stated in part:
 * * * The Applicant did not provide sufficient information regarding the historical performance in providing costeffective health care services by the Applicant and related parties to the Applicant [(OAC 3701-12-20-(J)(5)]. The applicant objected to this conclusion contending that the applicant, * * * (dba GNRC), was a newly formed entity and that it and its sole member, Frank Murphy, had no related parties. In support of this contention the applicant cited definitions of "Related Person" and "Affiliated Person" contained in OAC 3701-12-01 OAC. Applicant stated that those definitions pertain to persons transferring a CON, and since neither the Applicant nor Mr. Murphy is transferring a CON there is no "related person" to be considered.
However, OAC 3701-12-20(J)(5) refers to the term "related party," not "related person." OAC 3701-12-08(B) states "[e]ach applicant shall submit one original and one copy of the application forms and attachments prescribed by the director." In accordance with R.C. 3702.52(B), these forms provide a format for the presentation of the information required by the CON rules. The criteria contained in OAC 3701-12-20 are presented in a series of items providing specific directions and requesting specific information to satisfy those requirements.
 * * *
 The application showed that Mr. Murphy had an ownership interest in other nursing facilities and some information on those facilities was provided. However, information on the costs and payment rates, and information to explain them such as case-mix and special services or populations was not provided for those facilities. This information is needed to form an opinion on the cost-effectiveness of his operations and the likelihood that the proposed facility will be operated in a cost-effective way. This information is even more important when the applicant is a new business entity, as is the case here, because it does not have a track record of its own. Therefore I find that the Applicant did not provide sufficient information for me to determine whether OAC 3701-1220(J)(5) has been met.
 * * * The Applicant failed to address any approved CON applications filed by related parties * * *. OAC 3701-12-20(R) requires the Director to consider the historical performance of the applicant and related parties in complying with previously granted certificates of need. * * *
 * * *
 In response to this item the sponsor responded "Not applicable." This response was interpreted to mean that the applicant or a related party had not been granted a CON as described in 10.34, although no explicit statement to that effect was made. There was testimony at the hearing indicating that Mr. Murphy, as owner of Sunbury Realty, LLC had received an approved CON in 2003. The Applicant did not provide additional information at the hearing regarding the response to this item in the application. A post-hearing CON staff search of records revealed a CON granted to Sunbury Realty, LLC for Morning View Care Center of Sunbury, ODH File Number 1493-02-03, on February 19, 2004. The records further indicate that Mr. Murphy is the owner of Sunbury Realty, LLC.
 {¶ 13} On March 20, 2006, appellant filed an appeal with this court from the order of the director. Appellant raises the following assignment of error for this court's review:
 THE ADJUDICATION ORDER OF THE OHIO DEPARTMENT OF HEALTH IS NOT SUPPORTED BY RELIABLE, PROBATIVE, AND SUBSTANTIAL EVIDENCE AND IS NOT IN ACCORDANCE WITH LAW.
 {¶ 14} This court's standard of review in considering an appeal from a director's ruling on a CON application is set forth under R.C. 3702.60(F)(3), which states:
 The court shall affirm the director's order if it finds, upon consideration of the entire record and any additional evidence admitted under division (F)(2) of this section, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it shall reverse, vacate, or modify the order.
 {¶ 15} We will first address appellant's assertion that ODH failed to serve a copy of the hearing examiner's report and recommendation within five days as required by R.C. 119.09. Appellant maintains that the failure to do so resulted in prejudice.
 {¶ 16} R.C. 119.09 provides in relevant part:
 * * * The referee or examiner shall submit to the agency a written report setting forth his findings of fact and conclusions of law and a recommendation of the action to be taken by the agency. A copy of such written report and recommendation of the referee or examiner shall within five days of the date of filing thereof, be served upon the party or his attorney or other representative of record, by certified mail. The party may, within ten days of receipt of such copy of such written report and recommendation, file with the agency written objections to the report and recommendation, which objections shall be considered by the agency before approving, modifying, or disapproving the recommendation. * * *
 {¶ 17} Appellant maintains that undue delay in the approval of a CON results in a delay in licensure, and is a disservice to the citizens needing the facility's services. Appellant claims prejudice in the instant case because service was "delayed over months."
 {¶ 18} At the outset, the record fails to support appellant's contention that service was delayed for months. The hearing examiner's report was issued on January 24, 2006, and the certificate of service indicates that a copy was sent to the department on that date by regular mail. The record further indicates that a copy of the hearing examiner's report was sent to counsel for appellant by certified mail on February 8, 2006, and appellant filed objections to the hearing examiner's report on February 13, 2006.
 {¶ 19} Furthermore, "`[a]s a general rule, a statute providing a time for the performance of an official duty will be construed as directory so far as time for performance is concerned, especially where the statute fixes the time simply for convenience or orderly procedure.'"State ex rel. Ragozine v. Shaker, 96 Ohio St.3d 201, 2002-Ohio-3992, at ¶ 13, quoting State ex rel. Jones v. Farrar (1946), 146 Ohio St. 467.
 {¶ 20} This court has previously construed the provisions of R.C. 119.09, including the five-day time requirement, as directory, not mandatory. See Tyus v. Longview State Hosp. (Feb. 13, 1979), Franklin App. No. 78AP-627 (even though referee's report was not served upon appellant or his attorney within five days, appellant was not prejudiced as appellant's attorney became aware of report in time to file objections); Gibson v. Ohio Real Estate Comm. (Apr. 22, 1982), Franklin App. No. 81AP-811 (construing R.C. 119.09 and holding that "only the giving of the notice is essential, the time of giving such notice being for the purpose of expediting the proceedings"). Similarly, in the instant case, the record fails to show appellant has suffered prejudice as a result of any delay.
 {¶ 21} We will next address appellant's contention that the adjudication order is void because the director considered evidence outside the record without giving the parties notice and an opportunity to be heard. Specifically, appellant challenges the following language from the director's decision: "A post-hearing CON staff search of records revealed a CON granted to Sunbury Realty, LLC for Morning View Care Center of Sunbury, ODH File Number 1493-02-03, on February 19, 2004. The records further indicate that Mr. Murphy is the owner of Sunbury Realty, LLC."
 {¶ 22} By way of background, the director made the above-cited finding in considering the provisions of Ohio Adm. Code 3701-12-20(R), which states the director "shall consider the historical performance of the applicant and related parties in complying with previously granted certificates of need." Section 10.34 (Administration) of the CON application addresses this criteria, and states as follows:
 Identify by facility name, address, county and ODH file number (if known) all other certificates of need granted to the applicant within the past five years and certificates of need that have been granted more than five years ago but have been completed within the past five years. For each approved project, provide a description of the approved activity, identify any deviation from the approved activity, discuss any failure to develop the project in accordance with the approved timetable, and identify any fines or settlement agreements associated with the approved project.
 {¶ 23} The director noted that appellant's response on the application to this question was "Not applicable." The director interpreted such response "to mean that the applicant or a related party had not been granted a CON as described in 10.34, although no explicit statement to that effect was made." The director further noted, however, that there was testimony at the hearing indicating that Murphy, as the owner of Sunbury Realty, LLC, had received an approved CON in 2003, and that appellant "did not provide additional information at the hearing regarding the response to this item in the application."
 {¶ 24} In arguing that the director's decision is void, appellant cites R.C. 3702.52(C)(4), which states in part: "The director shall base decisions concerning applications for which an adjudication hearing is conducted under division (C)(3) of this section on the report and recommendations of the hearing examiner." Appellant acknowledges that, pursuant to R.C. 119.09, the director is authorized to "order additional testimony to be taken or permit the introduction of further documentary evidence." This court has previously noted that this statute also affords the director with discretion to order such additional evidence "even after the hearing examiner issues its written report setting forth findings of fact and conclusions of law." In the Matter of: Applicationof Manor Care of Parma, Franklin App. No. 05AP-398, 2005-Ohio-5703, at ¶ 18.
 {¶ 25} Appellant maintains that the director's staff search implicated matters outside the record that did not form the basis of testimonial evidence presented at the hearing. Appellant further contends that it is violative of due process concerns for an administrative agency to consider matters outside the record, and then base its decision on such evidence without affording the parties notice and an opportunity to respond. While we agree with the general proposition that an agency should not base its decision upon matters outside the record (and in the absence of notice to the parties), appellant cannot show prejudice in the instant case because the objectionable matters cited in the director's decision constituted evidence that was already before the hearing examiner by way of testimony and exhibits.
 {¶ 26} More specifically, during the hearing, Meals provided the following testimony in response to an inquiry as to whether appellant had at least one prior CON application not completed:
 * * * In late 2003 Sunbury Realty, which is an LLC owned by Frank Murphy, had a CON application to move 30 beds from Sunbury Nursing Home to Morningview Care Center of Sunbury, which is a facility owned by Frank Murphy, and that project was approved in February of 2004. Since then Mr. Murphy submitted a separate CON application for a facility to be known as Loch Lomond Care Center, which would have 50 beds total, and 30 of those beds were intended to be the 30 beds approved in the Morningview CON, and the Loch Lomond application was denied in May of this year, refiled again, and I think was recently declared incomplete, I think in mid September.
(Tr. 41.)
 {¶ 27} Also admitted at the hearing was Objector's Exhibit No. 6, a letter from ODH to counsel regarding the "Morning View Care Center of Sunbury/Delaware," stating that a CON had been approved for a project located at 14961 N. Old 3C Highway, Sunbury, Ohio, and that the applicant was Sunbury Realty, LLC.[1] The exhibit contained an accompanying memorandum, noting in part the following:
 Ownership/operation: The applicant, Sunbury Realty, LLC, is the owner of the Morning View building and site as well as the operating rights to the LTC beds. Frank Murphy holds100% ownership interest in Sunbury Realty, LLC. The operator of Morning View is Morning View Delaware, Inc., the lessee of the facility and an unrelated entity to the owner/applicant. * * *
 {¶ 28} Thus, while the director's decision cited the fact that a search of ODH records "revealed a CON granted to Sunbury Realty, LLC for Morning View Care Center of Sunbury, ODH File Number 1493-02-03, on February 19, 2004[,]" and that "[t]he records further indicate that Mr. Murphy is the owner of Sunbury Realty, LLC[,]" none of the facts cited by the director included information not previously presented at the hearing. Because the matters referenced by the director as part of an agency search were cumulative to the record before the hearing examiner, we do not find persuasive appellant's claim of prejudice or a due process violation that would mandate reversal on this issue. See, e.g.,National Labor Relations Bd. v. Johnson (C.A.6, 1962), 310 F.2d 550, 552
("to constitute fatal error it must appear that an administrative agency's journey outside the record worked substantial prejudice"), citing United States v. Pierce Auto Freight Lines (1946), 327 U.S. 515,66 S.Ct. 687. We further note that, following the direct examination of Meals, in which she testified that a CON had been granted to Sunbury in February 2004, and that Murphy was the owner of Sunbury Realty, appellant had the opportunity to cross-examine this witness regarding such testimony/evidence.
 {¶ 29} Appellant next contends that the hearing examiner improperly shifted the burden of proof from the objectors to appellant in contravention of R.C. 3702.52(C)(3), which states as follows: "The affected persons bear the burden of proving by a preponderance of evidence that the project is not needed or that granting the certificate would not be in accordance with sections 3702.51 to 3702.62 of the Revised Code or the rules adopted under section 3702.57 of the Revised Code."
 {¶ 30} Appellant first cites language by the hearing examiner, finding that appellant "did not deny that construction had begun on this Facility[,]" as demonstrating an impermissible shifting of the burden of proof. We disagree.
 {¶ 31} A review of the hearing transcript indicates that the objectors presented the only evidence regarding construction of a facility. This evidence included testimony by Meals that she personally visited the site, and that she took pictures of the site. Those pictures were admitted as exhibits during the hearing. In light of the record presented, we construe the hearing examiner's finding as simply a determination that the objectors carried their burden of proof, and that appellant had not produced any evidence challenging that proof. Thus, we do not find that the hearing examiner relieved objectors of their burden of proving construction had begun, nor do we conclude that the hearing examiner improperly shifted the burden of proof on this issue to appellant.
 {¶ 32} Appellant also challenges the hearing examiner's finding that appellant "has failed to address any other CON applications filed by related parties." Appellant maintains that the objectors failed to rebut the ODH staff report on this issue.
 {¶ 33} In response, ODH argues that ODH staff, in preparing their report, relied upon appellant's representation that the "historical performance of the applicant and related parties" was "[n]ot applicable." ODH maintains that the fact its staff initially relied upon appellant's response, made in the CON application, does not change the fact that subsequent evidence at the hearing proved otherwise. ODH points to the hearing testimony of Meals, previously cited above, regarding Murphy's involvement with other CON applications and facilities.
 {¶ 34} Again, viewed in context, we do not construe the challenged finding by the hearing examiner as shifting the burden to appellant. Rather, the hearing examiner determined that the objectors met their burden of presenting evidence on this issue through the testimony of Meals and other evidentiary materials previously cited above (which was unrebutted at the hearing), and it was within the province of the hearing examiner to credit such evidence.
 {¶ 35} Appellant also challenges whether Murphy was required to disclose information concerning other nursing homes he owns. On this issue, we note that both the hearing examiner and director rejected appellant's reliance upon the definitions of "Related Person," as set forth under Ohio Adm. Code 3701-12-01(QQ), and "Affiliated Person," under Ohio Adm. Code 3701-12-01(B). Specifically, the director stated in his decision: "OAC 3701-12-20(J)(5) refers to the term `related party,' not `related person.'" The director further noted that the criterion set forth in Ohio Adm. Code 3701-12-20(J)(5) is addressed under paragraph 10.24 of the CON application, in which the applicant is asked to discuss the historical performance of the applicant and "related parties" in providing cost-effective health care services.
 {¶ 36} In general, "[i]n interpreting an agency's statute or rule, a reviewing court `must give due deference to an administrative interpretation formulated by an agency which has accumulated substantial expertise, and to which the legislature has delegated the responsibility of implementing the legislative command.'" Manor Care of Parma, supra, at ¶ 16. Upon review, we do not find the agency's interpretation to be unreasonable. Further, based upon the evidence presented, we find that the order of the director is supported by reliable, probative, and substantial evidence, and is in accordance with law.
 {¶ 37} Appellant also argues it is entitled to an award of attorney fees as a prevailing party. Appellant's argument is based upon its contention that the director acted beyond the scope of his authority and denied appellant due process in failing to approve the CON application.
 {¶ 38} In light of our above determination that the director did not deny appellant due process or exceed his authority, appellant's argument is moot. Further, appellant is not a "[p]revailing eligible party," pursuant to R.C. 119.092(A)(2)(4), which defines that term to mean "an eligible party that prevails after an adjudication hearing, as reflected in an order entered in the journal of the agency."
 {¶ 39} Based upon the foregoing, appellant's single assignment of error is overruled, and the order of the director of ODH is hereby affirmed.
Order affirmed.
FRENCH and McCORMAC, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Also admitted at the hearing was objector's Exhibit No. 7, a CON application on behalf of Loch Lomond Realty, LLC, in which the applicant sought "[c]onstruction of a new fifty (50) bed nursing home consisting of thirty (30) beds from the CON granted under ODH File No. 1493-02-03, eleven (11) beds from Sunny Vee Nursing Home and nine (9) beds from the Morning View Care Center of Sunbury." Murphy signed under "Signature of applicant or authorized representative." Objector's Exhibit No. 8 included a letter from the director of ODH to counsel regarding the CON application for "Loch Lomond Care Center/Delaware County," informing counsel that the proposed project "is inconsistent with section 3701-12-20, 3701-12-23, and 3701-12-232 of the Ohio Administrative Code[,]" thereby denying the requested CON.