[Cite as *Mathias v. Pleasant Twp. Bd. of Trustees*, 2014-Ohio-3019.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | | |
|---|---|---|---|
| JEFF MATHIAS | : | JUDGES: | |
| | : | | |
| | : | Hon. William B. Hoffman, P.J. | |
| Plaintiff - Appellant | : | Hon. John W. Wise, J. | |
| | : | Hon. Craig R. Baldwin, J. | |
| | : | | |
| -vs- | : | | |
| | : | | |
| BOARD OF TRUSTEES OF | : | Case No. 14-CA-6 | |
| PLEASANT TOWNSHIP | : | | |
| FAIRFIELD COUNTY, OHIO, et al. | : | | |
| | : | | |
| Defendants - Appellees | : | O P I N I O N | |


CHARACTER OF PROCEEDING:        Appeal from the Fairfield County
                                Court of Common Pleas, Case No.
                                2013 CV 724


JUDGMENT:                       Affirmed


DATE OF JUDGMENT:               July 3, 2014


APPEARANCES:

For Plaintiff-Appellant                 For Defendants-Appellees

D. JOE GRIFFITH                         NICOLE M. KOPPITCH
Dagger, Johnston, Miller,               Reminger Co., LPA
Ogilvie & Hampson, LLP                  65 E. State Street, 4th Floor
144 E. Main Street                      Columbus, OH 43215
P.O. Box 667
Lancaster, OH 43130

*Baldwin, J.*

{¶1} Plaintiff-appellant Jeff Mathias appeals from the January 8, 2014 Decision and Judgment Entry of the Fairfield County Court of Common Pleas affirming the decision of defendants-appellees Board of Trustees of Pleasant Township, et al to terminate him as Fire Chief.

## STATEMENT OF THE FACTS AND CASE

{¶2} Appellant Jeff Mathias was the Fire Chief for the Pleasant Township Fire Department. The fire department had one African-American firefighter, Dwayne Holiday.

{¶3} On Thursday, May 30, 2013, appellant was on duty with firefighters Kyle Peters, Jason Miller and Kyle Locke when appellant made a racial statement. According to witnesses, appellant said that he did not have a problem with black people and "I think we should all own one." Transcript at 14. Kyle Peters believed that appellant had made an inappropriate comment and then Assistant Chief Andrew Fey told him that he would speak with appellant on Monday.

{¶4} On Saturday, June 1, 2013, then Assistant Chief Fey spoke with appellee Trustee Rayna Moellendick who had called him. When he told appellee Moellendick about the comment that appellant had made and told her that he was going to speak with appellant on Monday, appellee Moellendick asked then Assistant Chief Fey to obtain written statements from all parties involved. At the time, no one had complained that they were being racially harassed. Then Assistant Chief Fey obtained statements from the three firefighters who were present. Kyle Peters and Jason Miller, in their

statements, indicated that appellant, after making the racial statement, said that he was joking. They also stated that they had been talking about Dwayne Holiday at the time.

{¶5} On June 5, 2013, when then Assistant Chief Fey arrived for duty, he spoke with appellant privately and appellant told him that he had already discussed the incident with firefighters Peters and Miller and that they all agreed that it was a big misunderstanding. Appellant stated that he did not provide a written statement when asked to do so by Assistant Chief Fey for such reason.

{¶6} At the next regularly scheduled meeting of appellee Board of Trustees of Pleasant Township on June 6, 2013, appellee Board voted to place appellant on indefinite paid administrative leave until appellee Trustees had completed their investigation of the complaint against appellant and a final decision was made. They appointed Assistant Chef Fey acting chief until the matter was resolved.

{¶7} Appellee Board of Trustees initially appointed private citizen Dennis Lee to investigate the May 30, 2013 incident. However, after reconsidering, Lee declined to investigate. According to Chief Fey, appellees gave him a verbal order to investigate.

{¶8} After conducting his investigation, Chief Fey, on or about July 8, 2013, filed his charges with appellees. Chief Fey, in his report, indicated that appellant had made racial comments in the past. According to the report, appellant had told an African-American firefighter that he could not park in a specific location because it was for whites only.

{¶9} A hearing before appellees was held on August 1, 2013. At the hearing, Chief Fey, Carl Locke, Kyle Peters and Jason Miller testified on behalf of appellee

Township while Dwayne Holiday and appellant testified on appellant's behalf. The following is an excerpt from appellant's testimony on cross-examination:

{¶10} "Q: … As far as the May 30th, 2013, statement that you think everyone should own a black person, and I'm paraphrasing there, do you dispute that that statement was made?

{¶11} "A: I said 'have one'

{¶12} "Q: I apologize. You don't dispute that that was said?

{¶13} "A: No.

{¶14} "Q: The comment with respect to, 'This is whites only. Blacks park around the side,' do you dispute having made that statement?

{¶15} "A: That was a conversation in response to Mr. Holiday when he pulled in. Yes. We joked several times about different things. We have a relationship where – you know, as a matter of fact, the first time he came in, he asked me where the black bathroom was and the black drinking fountain. I told him, I said, 'Man, you can't talk like that around here' I said, 'You're equal. You will be that way, and you always will be that way.'

{¶16} "Q: So did you say that to him before or after you then made the comment to him?

{¶17} "A: This is when I hired him.

{¶18} "Q: So you hired him, and then, subsequently, you made a comment to him about where he could or could not park based on his race?

{¶19} "A: If I remember the statement or the conversation correct, he made the statement first, and I was joking with him about it.

{¶20} "Q: So I understand that it's your position that the comments being addressed tonight were, in your mind, jokes; correct?

{¶21} "A: Yeah. Very much out of context.

{¶22} "Q: Do you feel that those comments that were made by you were appropriate for the Acting Fire Chief to have made?

{¶23} "A: When I made that comment, it was actually – it wasn't against blacks. It was actually complimenting blacks because the statement was, if Obama can straighten the economy out, what could he have done back in history, if things would have been different.

{¶24} "Q: But did you feel it was – in hindsight, do you feel it was appropriate to make those comments as the Acting Fire Chief?

{¶25} A: Probably not."

{¶26} Transcript at 68-69.

{¶27} In addition, appellant testified that he was on probation at the time of the May 30, 2013 incident.

{¶28} Appellant filed a post-hearing brief with appellees. On August 19, 2013, Resolution 13-064 was issued terminating appellant from his position as Pleasant Township Fire Chief for violating various sections of Pleasant Township Policies and Procedures.

{¶29} Appellant filed a Notice of Appeal with the Fairfield County Court of Common Pleas. The record of the Township's proceedings was filed on October 10, 2013. On October 11, 2013, appellant filed a Motion to Strike documents from the record that were never admitted as exhibits at the hearing. As memorialized in an Entry

filed on October 16, 2013, the trial court set a briefing schedule and ordered that "the matter shall come on for review and decision on December 6, 2013." A Nunc Pro Tunc Order to correct a date was filed on October 17, 2013.

{¶30} Appellant filed his brief on November 1, 2013. The trial court, pursuant to an Entry filed on November 6, 2013, denied appellant's Motion to Strike. Appellees filed their brief on November 22, 2013 and appellant filed a reply brief on December 2, 2013.

{¶31} Appellant, on December 6, 2013, filed a Motion to Conduct Hearing. Appellant, in his motion, asked that an oral hearing be scheduled in accordance with R.C. 2506.01-02.

{¶32} The trial court, as memorialized in a Decision and Judgment Entry filed on January 8, 2014, denied appellant's request for a hearing. The trial court also affirmed the decision to terminate appellant as Fire Chief for Pleasant Township.

{¶33} Appellant now raises the following assignments of error on appeal:

{¶34} "I.    THE TRIAL COURT ERRED IN FAILING TO FIND THAT THE TOWNSHIP'S TERMINATION OF CHIEF MATHIAS VIOLATED OHIO REVISED CODE SECTION 505.38 DUE TO ITS FAILURE TO PROPERLY APPOINT AN INVESTIGATOR.

{¶35} "II.    THE TRIAL COURT ERRED IN FAILING TO FIND THAT THE TOWNSHIP'S ATTEMPT TO APPOINT ACTING CHIEF ANDREW FEY AS INVESTIGATOR, VIOLATED CHIEF MATHIAS' DUE PROCESS RIGHTS AND WAS ALSO IN VIOLATION OF R.C. 505.38.

{¶36} "III.    THE TRIAL COURT ERRED IN FAILING TO FIND THAT THE TOWNSHIP IMPROPERLY CONSIDERED INFORMATION AND DOCUMENTS NOT

SUBMITTED INTO EVIDENCE AT THE ADMINISTRATIVE HEARING OF THIS MATTER, WHICH WERE NOT A PART OF THE INVESTIGATION SUBMITTED BY ACTING CHIEF FEY TO THE PREJUDICE OF CHIEF MATHIAS.

{¶37} "IV.   THE TRIAL COURT ERRED IN FAILING TO FIND THAT THE PARTICIPATION OF COUNSEL PERSON RAYNA MOELLENDICK IN THE DECISION TO TERMINATATE CHIEF MATHIAS WAS A VIOLATION OF CHIEF MATHIAS' DUE PROCESS RIGHTS AS TRUSTEE MOELLENDICK INITIATED THE CHARGES AGAINST CHIEF MATHIAS.

{¶38} "V.    THE TRIAL COURT ERRED IN FAILING TO FIND THAT THE TERMINATION OF CHIEF MATHIAS WAS IN VIOLATION OF R.C. 733.35.

{¶39} "VI.   THE TRIAL COURT ERRED IN FINDING THAT THERE WAS COMPETENT OR CREDIBLE EVIDENCE TO SUPPORT THE TOWNSHIP'S FINDING THAT CHIEF MATHIAS WAS IN VIOLATION OF SECTION 201.02, 201.03, OR 202.01 OF THE PLEASANT TOWNSHIP POLICIES AND PROCEDURES.

{¶40} "VII.   THE TRIAL COURT ERRED IN FAILING TO FIND THAT THE TOWNSHIP'S TERMINATION OF CHIEF MATHIAS WAS ARBITRARY AND CAPRICIOUS.

{¶41} "VIII. THE TRIAL COURT ERRED IN FINDING THAT THERE WAS COMPETENT OR CREDIBLE EVIDENCE TO SUPPORT THE TOWNSHIP'S FINDING THAT CHIEF MATHIAS WAS IN VIOLATION OF SECTION 2013.02-10 OF THE PLEASANT TOWNSHIP POLICIES AND PROCEDURES.

{¶42} "IX.   THE TRIAL COURT ERRED IN FINDING THAT THERE WAS COMPETENT TO CREDIBLE EVIDENCE TO SUPPORT THE TOWNSHIP'S

FINDINGS THAT CHIEF MATHIAS WAS IN VIOLATION OF SECTION 316 OF THE PLEASANT TOWNSHIP POLICIES AND PROCEDURES.

{¶43} "X.    THE TRIAL COURT ERRED IN FINDING THAT THERE WAS COMPETENT OR CREDIBLE EVIDENCE TO SUPPORT THE TOWNSHIP'S FINDING THAT CHIEF MATHIAS WAS IN VIOLATION OF 313.04-18 OF THE PLEASANT TOWNSHIP POLICIES AND PROCEDURES.

{¶44} "XI.    THE TRIAL COURT ERRED IN FAILING TO FIND THAT THE BOARD OF TRUSTEES VIOLATED BOTH SECTIONS 505.38 AND REVISED CODE 733.35-37 IN THEIR INITIAL SUSPENSION OF CHIEF MATHIAS.

{¶45} "XII.    THE TRIAL COURT COMMITTED PLAIN ERROR IN FAILING TO HOLD A HEARING IN THIS CASE PURSUANT TO R.C. 2506.01, ET SEQ.

## STANDARD OF REVIEW

{¶46}    R.C. 2506.04 governs appeals from administrative agencies and states the following:

{¶47}    "…[T]he court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code."

{¶48}   In *Henley v. Youngstown Board of Zoning Appeals,* 90 Ohio St.3d 142, 2000–Ohio–493, 735 N.E.2d 433, the Supreme Court of Ohio discussed the difference between the standards of review to be applied by the trial court and the court of appeals:

{¶49}   "Construing the language of R.C. 2506.04, we have distinguished the standard of review to be applied by common pleas courts and courts of appeals in R.C. Chapter 2506 administrative appeals. The common pleas court considers the 'whole record' including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence.\* \* \*

{¶50}   "The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is '*more limited* in scope.' (Emphasis added.)\* \* \*. 'This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court.' \* \* \* "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. [The appellate court is to determine only if the trial court has abused its discretion.] \* \* \*The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." *Id.* at 147. (Citations omitted in original).

I

{¶51} Appellant, in his first assignment of error, argues that the trial court erred in failing to find that appellee Township's termination of him violated R.C. 505.38 due to its failure to properly appoint an investigator.

{¶52} R.C. 505.38 provides for the appointment and removal of fire chiefs and firefighters in townships and fire districts with a fire department. To initiate removal of a firefighter, R.C. 505.38(A) provides that the trustees should designate the fire chief or a private citizen to investigate the conduct and prepare the necessary charges as directed by R.C. 733.35 to R.C. 733.39.

{¶53} In the case sub judice, a private citizen, Dennis Lee, was originally appointed to conduct an investigation. However, after Lee declined to do so, Acting Fire Chief Fey was given a verbal order by appellees to conduct the investigation. There is nothing in R.C. 505.38 requiring that the Trustees formally "appoint", as opposed to designate, an investigator. By designating Acting Fire Chief Fey, who assumed the duties and responsibilities of the Fire Chief and was acting as such, to conduct the investigation, appellees complied with R.C. 505.38.

{¶54} Appellant's first assignment of error is, therefore, overruled.

II

{¶55} Appellant, in his second assignment of error, argues that Acting Fire Chief Fey had a conflict of interest and was biased and that his participation in the investigation violated appellant's due process rights.

{¶56} Appellant specifically maintains that Chief Fey admitted that he had heard other fire department personnel make racial jokes and had never reported the same.

He also notes that Chief Fey, when asked if he had been a participant in racial jokes, testified that he could not honestly answer such question. Appellant also argues that Chief Fey had a potential conflict of interest because, as Assistant Fire Chief, he would be in line to replace appellant if appellant was terminated.

{¶57} However, there is no evidence in the record that Fey had any bias against appellant or had any conflict of interest. Fey himself testified, when asked if he would be a candidate to be the Fire Chief if appellant was no longer there, that such statement was "[s]peculation." Transcript at 42. He testified that he did not believe that he had any conflict. We concur with appellees that any racial statements made prior to Acting Fire Chief Fey's appointment would have been appellant's responsibility to investigate and report to appellees. In the case sub judice, Chief Fey was designated to conduct an investigation into a specific incident that appellant, by his own admission, agreed occurred. Chief Fey testified that he took action with respect to such incident, as opposed to previous incidents, because "it was brought to me in a formal fashion…" Transcript at 16.

{¶58} Appellant's second assignment of error is, therefore, overruled.

III

{¶59} Appellant, in his third assignment of error, argues that the trial court erred in failing to find that appellees improperly considered information and documents not submitted into evidence at the administrative hearing in this matter in deciding to terminate appellant.

{¶60} "[T]to constitute fatal error it must appear that an administrative agency's journey outside the record worked substantial prejudice." *In re Wedgewood Realty*,

*LLC*, 10th Dist., 2006-Ohio-6734 at paragraph 28, citing to *National Labor Relations Bd. v. Johnson,* 310 F.2d 550, 552 (C.A.6, 1962), citing *United States v. Pierce Auto Freight Lines*, 327 U.S. 515, 66 S.Ct. 687 (1946).

{¶61} Appellant specifically contends that the Township provided documents as part of the record in this matter related to an incident that occurred in December of 2012 and that there was no mention of such event as part of Chief Fey's investigation. During such incident, appellant allegedly engaged in a physical altercation with a firefighter and was placed on administrative leave. Appellant was later placed on probation for one year. Appellant argues that no witnesses testified about the events of December 2012 and that the 2012 incident was not mentioned in the August 19, 2013, Resolution 13-064 terminating appellant.

{¶62} However, appellant, at the August 1, 2013 hearing, testified that he was on probation at the time of the May 30, 2013 incident and that he previously had been disciplined by appellees. Moreover, all three of the voting Trustees were previously involved in the decision to place appellant on probation in December of 2012. Thus, they were personally aware of the incident of December of 2012.

{¶63} Appellant's third assignment of error is, therefore, overruled.

IV

{¶64} Appellant, in his fourth assignment of error, argues that the trial court erred in failing to find that the participation of appellee Trustee Rayna Moellendick in the decision to terminate appellant violated appellant's due process rights because she initiated the charges against appellant.

{¶65} Contrary to appellant's assertion, there is no evidence that appellee Moellendick initiated the charges against appellant. The record shows that after receiving information from Kyle Peters that appellant had made an inappropriate racial comment, then Assistant Chief Andrew Fey told Peters that he would speak with appellant on Monday. When he spoke, on June 1, 2013, with appellee Trustee Rayna Moellendick who had called him, then Acting Chief Fey told appellee Moellendick about the comment that appellant had made and told her that he intended to speak with appellant on Monday. Appellee Moellendick asked then Assistant Chief Fey to obtain written statements from all parties involved. She did not ask him to conduct an investigation.

{¶66} Appellant's fourth assignment of error is, therefore, overruled.

## V, VI, VII, VIII, IX, X

{¶67} Appellant, in his fifth through tenth assignments of error, argues that the decision to terminate him was in violation of R.C. 733.35 and was not supported by competent or credible evidence. He further argues that the decision to terminate him was arbitrary and capricious.

{¶68} Appellant, in his fifth assignment of error, argues that the trial court erred in failing to find that his termination was in violation of R.C. 733.35.

{¶69} R.C. 733.35 states as follows: "The mayor of a municipal corporation shall have general supervision over each department and the officers provided for in Title VII of the Revised Code. When the mayor has reason to believe that the head of a department or such officer has been guilty, in the performance of his official duty, of bribery, misfeasance, malfeasance, nonfeasance, misconduct in office, gross neglect of

duty, gross immorality, or habitual drunkenness, he shall immediately file with the legislative authority, except when the removal of such head of department or officer is otherwise provided for, written charges against such person, setting forth in detail a statement of such alleged guilt, and, at the same time, or as soon thereafter as possible, serve a true copy of such charges upon the person against whom they are made…".

{¶70}   We note that a board of township trustees is the proper authority to file charges initiating the procedure whereby a township fireman, including the fire chief, may be removed, and it has the same authority in connection therewith that a municipal legislative authority and executive have.  1957 Ohio Atty.Gen.Ops. No. 912.

{¶71}   While appellant contends that he committed no act pursuant to such section which would justify his termination, we disagree. Appellant admittedly made a racially derogatory comment. While appellant argues that Dwayne Holiday and other firefighters also made similar jokes, appellant was the Chief of the Fire Department and set the tone and morale for the department as a whole. During the hearing, appellant himself admitted that it was probably not appropriate for him, as the Acting Fire Chief, to make the racial statements that he did.

{¶72}   Appellant also argues that his termination was not supported by competent and credible evidence and was arbitrary and capricious.

{¶73}   Appellant, in the case sub judice, was found in violation of Sections 201.02, 201.03, 202.01, 313.02-10, 316 and 313.04-18 of the Pleasant Township Policies and Procedures.

{¶74}   Section 201.02 (Administrative Staff) states as follows: "Officers shall be just, dignified, and firm in their dealings with subordinates, being careful to refrain from violent, abusive, or immoderate language in giving orders and directions as well as in conversations with subordinates or others." Section 201.03 (Administrative Staff) states, in relevant part, that "[o]fficers shall make certain that all rules, regulations, and orders are strictly carried out and obeyed, and shall set an example to their subordinates in showing due regard for such regulations and orders."

{¶75}   Section 202.01 provides that "[a]ll members of the fire department shall be governed by the customary rules of good behavior observed by law-abiding and self-respecting citizens. Conduct unbecoming of a fire service member shall not be tolerated."

{¶76}   Section 313 concerns grounds for disciplinary action. Section 313.02 states, in relevant part, as follows: "GROUP 1 OFFENSES – In general, Group I Offenses may be defined as those infractions which are of relativity minor nature and which cause only minimal disruption to the organization in terms of a slight, yet significant decrease in organization productivity, efficiency and/or morale.  Group I Offenses, if left undisciplined by proper authority, will usually cause only a temporary minor adverse impact against the organization unless such acts are compounded over time."

| | |
|---|---|
| 1st OFFENSE | Verbal Reprimand |
| 2nd OFFENSE | Written Reprimand |
| 3rd OFFENSE | One (1) day suspension without pay |
| 4th OFFENSE | Three (3) day suspension without pay |
| 5th OFFENSE | Termination |

{¶77}   "10. Malicious mischief, horseplay, wrestling or other undesirable conduct, including use of profane or abusive language on duty or in uniform."

{¶78}   Section 313.04-18 provides that "[t]hreatening, intimidating, coercing, interfering with, or verbally abusing a supervisor, the public, or other employees" is a Group III Offense and that a first offense is punishable "[u]p to and including termination." Finally, Section 316 contains the Harassment Policy that prohibits racial harassment. Section 316 states, in relevant part, as follows**:**

{¶79}   "316.01 - To maintain a quality working environment for all employees or potential employees of this department so that they may work free from intimidation, humiliation, insult or subjected to offensive physical or verbal abuse or actions, direct or insinuated, of a sexual, ethnic, racial or religious nature the Pleasant Township Fire Department adopts the following order against all forms of sexual, ethnic, racial, religious harassment or otherwise defined unwanted conduct.

{¶80}   "316.02 - Sexual, ethnic, racial and religious harassment is an offense first against this department and second an offense against the employee or group of employees.  Offense refer to physical, verbal or implied actions that have the purpose or effect of creating a hostile, offensive or intimidating working environment or has an ethnic, racial, religious or sexual basis, or both.  Examples would include but are not limited to: physical contact of sexual nature; sexual, racial, ethnic, or religious jokes, comments, insults, audio/visual material, cartoons, innuendoes or personal conduct or mannerisms that could be construed as offensive."

{¶81} Such policy further provides, in Section 316.06, that anyone who violates the same "will be subject to disciplinary action up to and including dismissal." There is no disciplinary step approach.

{¶82} We concur with appellee that appellant, who admitted to making a racial joke while on duty, clearly violated Section 316. As is stated above, a violation of such section in and of itself warranted immediate termination. While appellant argues that Dwayne Holliday, the sole African –American employee, did not feel offended by such joke, such section does not require a specific victim. We note that at the time appellant made such statement, he was the Fire Chief and was on probation.

{¶83} We further find that appellant's conduct was unbecoming and undignified in violation of Sections 201.02 and 202.01 and also violated Section 313.02-10, which prohibits "undesirable conduct." Appellant also violated Section 201.03 by doing nothing when firefighters made inappropriate comments in derogation of the rules.

{¶84} Based on the foregoing, we find that the trial court did not abuse its discretion in determining the board of trustees' decision to terminate appellant was supported by competent and credible evidence and was not unconstitutional, illegal, arbitrary, capricious or unreasonable.

{¶85} Appellant's fifth, sixth, seventh, eighth and ninth assignments of error, are therefore, overruled. Appellant's tenth assignment of error is moot.

XI

{¶86} Appellant, in his eleventh assignment of error, argues that the trial court erred in failing to find that appellees violated both R.C. 505.38 and R.C. 733.35-37 in their initial suspension of appellant.

{¶87} Appellant contends that appellees violated R.C. 505.38. As is stated above, to initiate removal of a firefighter, R.C. 505.38(A) provides that the trustees should designate the fire chief or a private citizen to investigate the conduct and prepare the necessary charges as directed by R.C. 733.35 to R.C. 733.39. Appellant maintains that appellee did not appoint an investigator to investigate the charges against him until June 24, 2013 and that his initial suspension on June 6, 2013, which he alleges was before an investigation had begun, violated R.C. 505.38(A).

{¶88} However, appellant was not suspended on June 6, 2013. As the minutes of the June 6, 2013 meeting of the Pleasant Township Board of Trustees show, appellant, on such date, was placed on an indefinite paid administrative leave.

{¶89} Appellant also maintains that his suspension was in violation of R.C. 733.37. Such section states as follows: "Pending any proceedings under sections 733.35 and 733.36 of the Revised Code, an accused person may be suspended by a majority vote of all members elected to the legislative authority of the municipal corporation, but such suspension shall not be for a longer period than fifteen days, unless the hearing of such charges is extended upon the application of the accused, in which event the suspension shall not exceed thirty days." Appellant argues that his suspension began on June 6, 2013 and continued through the second week of August and, therefore, was more than sixty days.

{¶90} However, appellant was not suspended on June 6, 2013 but rather was suspended effective July 18, 2013 through August 1, 2013. At the August 1, 2013 hearing, appellant was placed on paid administrative leave. Therefore, there was no violation of R.C. 733.37.

{¶91}   Appellant's eleventh assignment of error is, therefore, overruled.

XII

{¶92}   Appellant, in his twelfth and final assignment of error, argues that the trial court erred in failing to hold a hearing in this case pursuant to R.C. 2506.01, et seq.

{¶93}   R.C. 2506.03 provides, in relevant part, as follows: "A) The hearing of an appeal taken in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code shall proceed as in the trial of a civil action, but the court shall be confined to the transcript filed under section 2506.02 of the Revised Code unless it appears, on the face of that transcript or by affidavit filed by the appellant, that one of the following applies:…

{¶94}   "(5) The officer or body failed to file with the transcript conclusions of fact supporting the final order, adjudication, or decision.

{¶95}   "(B) If any circumstance described in divisions (A)(1) to (5) of this section applies, the court shall hear the appeal upon the transcript and additional evidence as may be introduced by any party. At the hearing, any party may call, as if on cross-examination, any witness who previously gave testimony in opposition to that party."

{¶96}   In the case sub judice, the trial court,  in a Nunc Pro Tunc Entry filed on October 17, 2013, ordered that appellant's brief was due on or before November 1, 2013, appellees' brief was due on or before November 22, 2013 and appellant's reply brief was due on or before November 29, 2013. The trial court stated that the matter "shall come or for review and decision on December 6, 2013."

{¶97}   On December 6, 2013, appellant filed a motion asking that the trial court conduct a hearing in accordance with R.C. 2506.01-02. Appellant, in his motion, argued

that no conclusions of fact were filed by appellee Township supporting the order to terminate appellant and that, therefore, the trial court was required to hear the appeal based not only on the transcript, but also upon additional evidence.

{¶98}   We find that the trial court did not err in failing to hold a hearing. Appellant filed his motion requesting the same on December 6, 2013, which was the date established by the trial court as the day a decision would be made. The transcript in this matter was filed on October 10, 2013, nearly two months before, and the briefs had all been filed. As noted by appellees, prior to the December 6, 2013 decision date, appellant never requested a hearing. We find that appellant's request was untimely.

{¶99}   Appellant's twelfth assignment of error is, therefore, overruled.

{¶100} Accordingly, the judgment of the Fairfield County Court of Common Pleas is affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Wise, J. concur.